IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EDUCATION AFFILIATES INC., ET AL.   \*
                                        \*
                                        \*
v.                                 \*      Civil No. – JFM-15-1624
                                        \*
FEDERAL INSURANCE COMPANY, ET AL.\*
                                    \*\*\*\*\*\*

## MEMORANDUM

Education Affiliates, Inc. and its wholly-owned subsidiary, KIMC Investments, Inc., have filed this action against Federal Insurance Company for a defense against claims brought against them for alleged wrongful advertising in connection with services they performed (or did not perform) to students at career colleges. Plaintiffs have filed a motion for partial judgment on the pleadings, seeking to establish Federal's liability for providing them with a defense. The motion has been fully briefed, and it will be granted.[1]

Education Affiliates, through its subsidiaries, owns for-profit, post-secondary educational institutions (career colleges) throughout the country. KIMC, through its subsidiaries, owns several post-secondary schools, some of them formerly known as "MedVance Institute." They were insured by Federal during the relevant time period. In August 2010 the United States Government Accountability Office issued a report targeting career colleges, such as those owned and operated by defendants. After the issuance of the report, the Florida Attorney General's Office served a subpoena upon KIMC under Florida's Deceptive and Unfair Trade Practices Act. Thereafter, the Florida Attorney General served KIMC with a draft complaint, alleging, *inter*

---

[1] Federal raises an objection that plaintiff's motion is procedurally improper. However, it states no grounds supporting its position. It does not allege that there is a genuine dispute of any material fact, and that discovery is thus necessary.

1

*alia*, that "the defendants market their services to perspective students through unfair, deceptive and/or unconscionable acts and practices . . . including hard pressure sales tactics, misreading statements, intentional omissions of material information . . ., and misrepresentations to induce students to enroll in programs offered by the defendants."

I.

In October 2010, six former MedVance students filed a complaint against Education Affiliates and KIMC, alleging that "Med Vance recruiters" made "false statements, regarding the quality of education and facilities, accreditation, graduates' preparedness to pass certification examinations, the cost of education, the ease of repaying federal loans, and . . . job prospects upon graduation." The complaint further alleged that "MedVance recruiters, pressured to sign up as many students as possible . . . make various representations to potential students to accomplish statistical enrollment objectives."

In September 2011, 26 former MedVance students, represented by the same law firm that instituted the first law suit, sued *Education Affiliates and KIMC*. The complaint in that case also focused upon MedVance's marketing and advertising. Ultimately, Education Affiliates successfully moved to dismiss the two complaints and to compel arbitration. Five of the plaintiffs in the original litigation and one in the second litigation proceeded with their claims in individual arbitrations. Two additional students who had not previously filed suit also instituted arbitration proceedings against Education Affiliates and KIMC.

Plaintiffs requested a defense from Federal under the Director's & Officers Liability Coverage included in Federal's "Forefront Portfolio" policy. Under the D&O coverage, Federal promised to pay "Loss" on behalf of the Insureds "resulting from any Insured Organization Claim first made against such Insured Organization during the policy period . . . for Wrongful

2

Acts . . . ." "Wrongful Act" is defined as "any error, misstatement, misleading statements, acts, omission, neglect or breach of any duty committed, attempted, or allegedly committed or attempted by . . . any Insured Organization.

The policy includes a "Professional Services Exclusion" ("PSE"). The Exclusion provides that "No coverage will be available under Insuring Clause for any Insured Organization Claim . . . for any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted or allegedly committed or attempted in connection with the rendering of, or actual or alleged failure to render, any professional services for others by any person or entity otherwise entitled to coverage under this Coverage Section . . . ."

This case raises questions of whether (1) The PSE excludes coverage, and (2) whether work performed in responding to the subpoena issued by the Florida Attorney General's Office is covered.

II.

On the first question plaintiffs' position is that "[t]he PSE cannot apply as a matter of law because the *marketing* of professional services is not the *rendering* of professional services, much less professional services "for others" as required to trigger the exclusion. That position is correct. In *Liberty Life Ins. Co. v. Travelers Indem. Co. of Illinois*, No. 98-1674, 1999 WL 417436, at *2 (4th Cir. May 5, 1999), the Fourth Circuit held that practices that are "common to most businesses," require[ing] no "specialized knowledge separate and apart from that required in *any* business," are not professional services. Further, the Fourth Circuit ruled that if such "routine" services were deemed to be excluded "professional services," the result would be that coverage under the policies would be practically "eviscerated." *Id.* at *3. This would run

counter to Maryland law that does not permit an exclusion to be interpreted in a way that would render a policies grant of coverage "illusory." *See Nautilus Ins. Co. v. BSA Ltd. Partnership*, 602 F. Supp. 2d 641, 655 n.7 (D. Md. 2009). Here, to accept Federal's interpretation of the PSE would "eviscerate" the coverage that the policy affords. The PSE applies only to the "rendering" of services "for others." The alleged illegal marketing in which plaintiffs engaged was for their own benefit, not the benefit of "others." The fact that the marketing relates to the professional services to be rendered to others cannot be said to conflate the two because, in light of the fact plaintiffs' core business is the rendering of educative services to others, such conflation would provide an "evisceration" of coverage.

### III.

Although it presents a closer question, plaintiffs' position as to work performed in responding to the subpoena issued by the Florida Attorney General's Office is also correct. Plaintiff contends that the subpoena constitutes a "claim" because it is "a written demand for . . . non-monetary relief." This falls within the definition of "claim" under the policy. *See Minuteman International, Inc. v. Great Am. Ins. Co.*, No.-03-C-6067, 2004 WL 603482 (N.D. Ill. Mar. 22, 2004); *Syracuse Univ. v. National Union Fire Ins. Co. of Pittsburgh, PA*, No. 2012EF63, 2013 WL 3357812 (N.Y. Sup. Ct. March 7, 2013). Federal argues that the definition of "claim" for "Insured Organization[s]" differs from the definition of "Claim" for Directors and Officers, in that only the latter refers to a "subpoena." However, the purpose of adding the "subpoena" coverage was to provide protection for individual Directors and Officers who had subpoenas served upon them and were issued to an "Insured Organization."

A separate order granting plaintiffs' motion is being entered herewith.

Date: July 28, 2016

_____
J. Frederick Motz
United States District Judge

FILED
U.S. DISTRICT COURT
DISTRICT
2016 JUL 28 AM 11:54
CLERK'S OFFICE
AT BALTIMORE
BY _____ DEPUTY